# EXHIBIT 3

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

_____

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 13, 2006

Christopher S. Rizek, Esq.
Scott D. Michel, Esq.
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, D.C. 20005

Re:   **HVB – Deferred Prosecution Agreement**

Dear Gentlemen:

Pursuant to our discussions and written exchanges, the United States Attorney's Office for the Southern District of New York (the "Office") and the defendant Bayerische Hypo- und Vereinsbank AG ("HVB"), pursuant to authority granted by its Management Committee in the form of a Management Committee Resolution (a copy of which is attached hereto as Exhibit A), hereby enter into this Deferred Prosecution Agreement (the "Agreement").[1]

**The Criminal Information**

1.      HVB will consent to the filing of a one-count Information (the "Information") in the United States District Court for the Southern District of New York (the

_____

[1] The term "HVB" includes HVB Risk Management Products Inc., and HVB U.S. Finance Inc. (formerly known as HVB Structured Finance, Inc.), and HVB America, Inc.

"Court") charging HVB with participating in a conspiracy in violation of 18 U.S.C. § 371 to (i) defraud the United States and its agency, the Internal Revenue Service (hereinafter "IRS"); (ii) commit tax evasion in violation of 26 U.S.C. § 7201; and (iii) make and subscribe false and fraudulent tax returns, and aid and assist in the preparation and filing of said tax returns in violation of 26 U.S.C. § 7206. A copy of the Information is attached hereto as Exhibit B.

<u>Acceptance of Responsibility for Violation of Law</u>

2.      HVB admits and accepts that, as set forth in detail in the Statement of Facts, attached hereto as Exhibit C, through the conduct of certain HVB employees, during the period from 1996 through 2003, HVB assisted high net worth United States citizens to evade United States individual income taxes on over $1.8 billion in capital gain and ordinary income by participating in and implementing fraudulent tax shelter transactions, including Bond Linked Issue Premium Structure ("BLIPS"), Custom Adjustable Rate Debt Structure ("CARDS"), and certain tax shelter transactions involving non-resident alien individuals and other tax-indifferent parties. HVB personnel engaged in conduct that was unlawful and fraudulent, including: (i) agreeing to participate in fraudulent tax shelter transactions; and (ii) preparing and signing false and fraudulent factual recitations, representations, and documents as part of the documentation underlying the shelters.

3.      HVB agrees that it will pay a total of $29,635,125, to the United States as part of this Agreement, which payments are attributable to the following: disgorgement of $16,195,999 of fees received by HVB from the activities described in the Statement of

2

Facts, $6,000,000 of which will be forfeited to the United States pursuant to a civil forfeiture complaint filed against HVB in the United States District Court for the Southern District of New York; restitution to the IRS of $6,989,324 for actual losses suffered by the IRS; and a penalty of $6,449,802 to settle the IRS's civil penalty examination of HVB pursuant to the closing agreement described below.  HVB agrees that it will satisfy this obligation on or before February 17, 2006.  In the event that HVB fails to make this payment on a timely basis, the Office, in its sole discretion, can treat the failure to pay as a violation of the terms of the Agreement or require HVB to extend the length of the Deferred Prosecution for a period of up to an additional eighteen (18) months.

      4.     HVB agrees that no portion of the $29,635,125 that HVB has agreed to pay to the United States under the terms of this Agreement is deductible on any Federal or State tax or information return.

### Permanent Restrictions And Controls On HVB's Banking Practice

      5.     The Office recognizes that HVB had previously implemented certain restrictions on it business and changes in its banking practices in order to improve its compliance with the tax laws. Pursuant to this Agreement, HVB agrees to implement, throughout its U.S. operations and with respect to any HVB operations affecting United States income taxes, the following permanent restrictions: (i) HVB will not develop or assist in developing, market or assist in marketing, sell or assist in selling, or implement or assist in implementing, any "listed transaction" as defined to include any transaction described in 26 U.S.C. § 6707A(c)(2); (ii) HVB also will not participate in any transaction or strategy

3

that has a significant tax component, as defined in 31 C.F.R. § 10.35(b), unless such transaction or strategy is accompanied by a "should" level opinion, which opinion HVB independently concurs with; (iii) except with regard to the audit of HVB's financial statements, HVB will not seek tax services or tax advice of any kind from the public accounting firm that conducts audits of its financial statement; (iv) HVB will adopt a new "transaction approval" process for loan officers that involves review and approval, by its Tax Director, of any transaction that has a significant tax component; and (v) HVB will abide by previously instituted operational controls that will prevent account officers from controlling banking transactions after the formal closing of the transactions.

## Cooperation

6.     HVB acknowledges and understands that the cooperation it has provided to date with the criminal investigation by the Office, and its pledge of continuing cooperation, are important and material factors underlying the Office's decision to enter into this Agreement, and, therefore, HVB agrees to cooperate fully and actively with the Office, the IRS, and with any other agency of the government designated by the Office ("Designated Agencies") regarding any matter relating to the Office's investigation about which HVB has knowledge or information.

7.     Consistent with its obligations under law, HVB agrees that its continuing cooperation with the Office's investigation shall include, but not be limited to, the following:

4

(a).    Completely and truthfully disclosing all information in its possession to the Office and the IRS about which the Office and the IRS may inquire, including but not limited to all information about activities of HVB and present and former employees and agents of HVB;

(b).    Volunteering and providing to the Office any information and documents that come to HVB's attention that may be relevant to the Office's investigation;

(c).    Assembling, organizing, and providing, in responsive and prompt fashion, and, upon request, expedited fashion, all documents, records, information, and other evidence in HVB's possession, custody, or control as may be requested by the Office or the IRS;

(d).    Using its reasonable best efforts to make available its present and former employees to provide information and/or testimony as requested by the Office and the IRS, including sworn testimony before a grand jury or in court proceedings, as well as interviews with law enforcement authorities, and to identify witnesses who, to HVB's knowledge and information, may have material information concerning the Office's investigation, including but not limited to the conduct set forth in the Information and the Statement of Facts;

(e).    Providing testimony or information necessary to identify or establish the original location, authenticity, or other basis for admission into evidence of documents or physical evidence in any criminal or other proceeding as requested by the Office or the IRS, including information and testimony concerning the Office's

5

investigation, including but not limited to the conduct set forth in the Information and the Statement of Facts; and

(f).     With respect to any information, testimony, documents, records or physical evidence provided by HVB to the Office or a grand jury, HVB consents to any and all disclosures of such materials to such Designated Agencies as the Office, in its sole discretion, deems appropriate. With respect to any such materials that constitute "matters occurring before the grand jury" within the meaning of Rule 6(e) of the Federal Rules of Criminal Procedure, HVB further consents to:  (i) any order sought by the Office permitting such disclosures; and (ii) the Office's ex parte or in camera application for such orders.

8.     HVB agrees that its obligations to cooperate will continue even after the dismissal of the Information, and HVB will continue to fulfill the cooperation obligations set forth in this Agreement in connection with any investigation, criminal prosecution or civil proceeding brought by the Office or by or against the IRS or the United States relating to or arising out of the conduct set forth in the Information and the Statement of Facts and relating in any way to the Office's investigation.  HVB's obligation to cooperate is not intended to apply in the event that a prosecution against HVB by this Office is pursued and not deferred.

### Deferral of Prosecution

9.     In consideration of HVB's entry into this Agreement and its commitment to:  (a) accept and acknowledge responsibility for its conduct; (b) cooperate with the Office and the IRS; (c) make the payments specified in this Agreement; (d) comply

with Federal criminal laws, including Federal tax laws; and (e) otherwise comply with all of the terms of this Agreement, the Office shall recommend to the Court that prosecution of HVB on the Information be deferred for the period of eighteen months from the date of the signing of this Agreement. HVB shall expressly waive indictment and all rights to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, Title 18, United States Code, Section 3161, Federal Rule of Criminal Procedure 48(b), and any applicable Local Rules of the United States District Court for the Southern District of New York for the period during which this Agreement is in effect.

10.    The Office agrees that, if HVB is in compliance with all of its obligations under this Agreement, the Office will, at the expiration of the period of deferral (including any extensions thereof), seek dismissal without prejudice as to HVB of the Information filed against HVB pursuant to paragraphs 1 and 9 of this Agreement. Except in the event of a violation by HVB of any term of this Agreement, the Office will bring no additional charges against HVB relating to its participation in BLIPS, CARDS, and transactions involving non-resident alien individuals ("NRAs") and other tax-indifferent parties, including 357(c) and Common Trust Fund tax shelter transactions, as described in the Statement of Facts. This Agreement does not provide any protection against prosecution for any crimes except as set forth above and does not apply to any individual or entity other than HVB. Specifically, this Agreement provides protection only for the four tax shelters enumerated herein — BLIPS, CARDS, 357(c), and Common Trust Fund tax shelter transactions. HVB and the Office understand that the Agreement to defer prosecution of

7

HVB must be approved by the Court, in accordance with 18 U.S.C. § 3161(h)(2). Should the Court decline to approve the Agreement to defer prosecution for any reason, both the Office and HVB are released from any obligation imposed upon them by this Agreement, and this Agreement shall be null and void.

11.     It is further understood that should the Office in its sole discretion determine that HVB has, after the date of the execution of this Agreement: (a) given false, incomplete or misleading information, (b) committed any crime, or (c) otherwise violated any provision of this Agreement, HVB shall, in this Office's sole discretion, thereafter be subject to prosecution for any federal criminal violation of which the Office has knowledge, including but not limited to a prosecution based on the Information or the conduct described therein. Any such prosecution may be premised on any information provided by or on behalf of HVB to the Office or the IRS at any time. Any such prosecutions that are not time-barred by the applicable statute of limitations on the date of this Agreement may be commenced against HVB within the applicable period governing the statute of limitations. In addition, HVB agrees to toll, and exclude from any calculation of time, the running of the criminal statute of limitations for a period of 5 years from the date of the execution of this Agreement. By this Agreement, HVB expressly intends to and hereby does waive its rights in the foregoing respects, including any right to make a claim premised on the statute of limitations, as well as any constitutional, statutory, or other claim concerning pre-indictment delay. Such waivers are knowing, voluntary, and in express reliance on the advice of HVB's counsel.

12.     It is further agreed that in the event that the Office, in its sole discretion, determines that HVB has violated any provision of this Agreement, including HVB's failure to meet its obligations under this Agreement: (a) all statements made by or on behalf of HVB to the Office and the IRS, including but not limited to the Statement of Facts, or any testimony given by HVB or by any agent of HVB before a grand jury, or elsewhere, whether before or after the date of this Agreement, or any leads from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings hereinafter brought by the Office against HVB; and (b) HVB shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by or on behalf of HVB before or after the date of this Agreement, or any leads derived therefrom, should be suppressed or otherwise excluded from evidence. It is the intent of this Agreement to waive any and all rights in the foregoing respects.

13.     HVB agrees that, in the event that the Office determines during the period of deferral of prosecution described in paragraph 9 above (or any extensions thereof) that HVB has violated any provision of this Agreement, a one-year extension of the period of deferral of prosecution may be imposed in the sole discretion of the Office, and, in the event of additional violations, such additional one-year extensions as appropriate, but in no event shall the total term of the deferral-of-prosecution period of this Agreement exceed five years.

9

14.     HVB agrees that it shall not, through its attorneys, agents, or employees, make any statement, in litigation or otherwise, contradicting the Statement of Facts or its representations in this Agreement. Consistent with this provision, HVB may raise defenses and/or assert affirmative claims in any civil proceedings brought by private parties as long as doing so does not contradict the Statement of Facts or such representations. Any such contradictory statement by HVB, its present or future attorneys, agents, or employees shall constitute a breach of this Agreement and HVB thereafter shall be subject to prosecution as specified in paragraphs 9 through 12, above, or the deferral-of-prosecution period shall be extended pursuant to paragraph 13, above. The decision as to whether any such contradictory statement will be imputed to HVB for the purpose of determining whether HVB has breached this Agreement shall be at the sole discretion of the Office. Upon the Office's notifying HVB of any such contradictory statement, HVB may avoid a finding of breach of this Agreement by repudiating such statement both to the recipient of such statement and to the Office within 48 hours after receipt of notice by the Office. HVB consents to the public release by the Office, in its sole discretion, of any such repudiation.

### The Compliance & Ethics Program

15.     In addition to the remedial actions that HVB has taken to date, HVB shall implement and maintain, throughout its U.S. operations and with respect to any HVB operations affecting United States income taxes, an effective compliance and ethics program that fully comports with the criteria set forth in Section 8B2.1 of the United States Sentencing Guidelines (the "Compliance & Ethics Program"). As part of the Compliance

& Ethics Program, HVB shall maintain a permanent compliance office and a permanent educational and training program relating to the laws and ethics governing the work of HVB's employees. HVB agrees that all HVB professionals and any employees of HVB shall receive appropriate training pursuant to the Compliance & Ethics Program within one year of the execution of this Agreement, and shall be given such training on a regular basis. Also as part of the Compliance & Ethics Program, HVB shall (a) ensure that an effective program be maintained to punish violators of laws, policies, and standards, and reward those who report such violators; (b) ensure that no  employee, agent, or consultant of HVB is penalized in any way for providing information relating to HVB's compliance or noncompliance with laws, policies, and standards to any HVB official, government agency, or compliance officer. HVB shall take steps to audit the Compliance & Ethics Program to ensure it is carrying out the duties and responsibilities set out in this Agreement.

### Closing Agreement With The IRS

16.     HVB and the IRS will enter into a closing agreement pursuant to 26 U.S.C. § 7121 providing for resolving the examination of HVB under 26 U.S.C. §§ 6694, 6700, 6701, 6707, 6708, 7407, and 7408, relating to BLIPS, CARDS, 357(c) and Common Trust Fund tax shelter transactions, and pursuant to which HVB will pay the $6,449,802 civil penalty described in paragraph 3 above.

### The Office's Discretion

17.     HVB agrees that it is within the Office's sole discretion to choose, in the event of a violation, the remedies contained in paragraphs 3, 11, and 12 above, or instead

to choose to extend the period of deferral of prosecution pursuant to paragraph 13. HVB understands and agrees that the exercise of the Office's discretion under this Agreement is unreviewable by any court.  Should the Office determine that HVB has violated this Agreement, the Office shall provide notice to HVB of that determination and provide HVB with an opportunity to make a presentation to the Office to demonstrate that no violation occurred, or, to the extent applicable, that the violation should not result in the exercise of those remedies or in an extension of the period of deferral of prosecution.

## Limits Of This Agreement

18.     It is understood that this Agreement is binding on the Office and the Department of Justice but specifically does not bind any other Federal agencies, any state or local law enforcement agencies, any licensing authorities, or any regulatory authorities. However, if requested by HVB or its attorneys, the Office will bring to the attention of any such agencies, including but not limited to any regulators, the Agreement, the cooperation of HVB, and its compliance with its obligations under this Agreement.

## Public Filing

19.     HVB and the Office agree that, upon filing of the Information in accordance with paragraph 1 and 9 hereof, this Agreement (including the Statement of Facts and the other attachments hereto) shall be filed publicly in the proceedings in the United States District Court for the Southern District of New York.

## Integration Clause

20.     This Agreement sets forth all the terms of the Deferred Prosecution Agreement between HVB and the Office. No modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Office, HVB's attorneys, and a duly authorized representative of HVB.

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

By: _____

Stanley J. Okula, Jr.
Kevin Downing
Justin S. Weddle
Margaret Garnett
Assistant United States Attorneys

_____

Lev L. Dassin
Chief, Criminal Division

_____

Shirah Neiman
Chief Counsel to the U.S. Attorney

Accepted and agreed to:

_____

Caplin & Drysdale, Chartered
Christopher S. Rizek, Esq.
Scott D. Michel, Esq.

_____

HVB AG, by Jan Kunfer

_____

HVB AG, by Christopher J. Wrenn

13

# EXHIBIT A

# RESOLUTION

## OF THE MANAGEMENT COMMITTEE

### OF BAYERISCHE HYPO- UND VEREINSBANK AG,

#### NEW YORK BRANCH

#### as of January 27, 2006

The Management Committee of Bayerische Hypo- und Vereinsbank AG, New York Branch (the "Bank") hereby resolves as follows:

*WHEREAS*, the Bank has been engaged in discussions with the United States Attorney's Office for the Southern District of New York (the "Office") in connection with an investigation being conducted by the Office into activities of the Bank relating to the Bank's participation in certain tax shelter transactions;

*WHEREAS*, the Management Committee of the Bank has determined that it is in the best interests of the Bank to enter into the Deferred Prosecution Agreement and the closing agreement, substantially in the form of Exhibits A and B attached hereto, each of which the Management Committee has reviewed, including all attachments thereto, with outside counsel representing the Bank;

*NOW THEREFORE BE IT RESOLVED* that the Management Committee of the Bank consents to the resolution of the discussions with the Office and the IRS by entering into the Deferred Prosecution Agreement and the closing agreement in substantially the same form as reviewed by the Management Committee herewith; and

*BE IT FURTHER RESOLVED THAT* the Management Committee of the Bank hereby authorizes its Chairman, Jan Kupfer, and its Member, Christopher Wrenn, acting jointly, to execute the Deferred Prosecution Agreement and the closing agreement on behalf of the Bank, and they, as well as Gabrielle Falger, the Bank's General Counsel, and the Bank's outside counsel, Caplin & Drysdale, are hereby authorized to take any and all other actions as may be necessary or appropriate, and to approve the forms, terms, or provisions of any agreements or other documents as may be necessary or appropriate to carry out and effectuate the purpose and intent of the foregoing.

*IN WITNESS WHEREOF*, the Management Committee of the Bank has executed this Resolution effective as of the day and year first above written.

_____
Jan Kupfer
Managing Director
Chairman of the Management Committee

_____
Matthew Dunn
Managing Director
Management Committee Member

_____
Christopher Wrenn
Managing Director
Management Committee Member