1   LUKENS LAW GROUP
    WILLIAM M. LUKENS (SBN 037196)
2   JENNIFER L. JONAK (SBN 191323)
    One Maritime Plaza, Suite 1600
3   San Francisco, CA 94111
    Telephone: (415) 433-3000
4   Facsimile: (415) 781-1034

5   Attorneys for Plaintiff John C. Rezner

6

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9

10  JOHN C. REZNER, an individual,          Case No. 06-2064 JW (RS)

11                 Plaintiff,

12          v.

13  BAYERISCHE HYPO-UND VEREINSBANK          **PLAINTIFF JOHN C.**
    AG, a corporation; HVB STRUCTURED        **REZNER'S MOTION TO**
14  FINANCE L, INC., a corporation; RANDALL S. **COMPEL PRODUCTION OF**
    BICKHAM, an individual; SKYLINE          **DOCUMENTS BY HVB**
15  ADVISORY SERVICES, LLC, a limited liability
    corporation; and DOES ONE THROUGH
16  THIRTY, inclusive;                       Date:  January 9, 2008
                                             Time:  9:30 a.m.
17                 Defendants.               Courtroom:  4
                                             Magistrate Judge Seeborg
18

19

20

21

22

23

24

25

26

27

28

Lukens Law Group
One Maritime Plaza, Suite 1600
San Francisco, CA 94111

1  TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2

3  PLEASE TAKE NOTICE that on January 9, 2008, at 9:30 a.m., or as

4  soon thereafter as counsel may be heard, in Courtroom 4 of the above-entitled Court

5  located at 280 South 1st Street, San Jose, CA 95113, Plaintiff John C. Rezner will move

6  this Court for an order compelling defendants Bayerische Hypo-und Vereinsbank AG and

7  HVB Structured Finance, Inc. ("HVB") to respond and produce documents responsive to

8  Request Nos. 5, 6, 8-75, 87-96, 98-105, 108-112, 114-116, 118-120, 122-129, 133-139,

9  141-144, 146, 149, and 153-156 of Plaintiff's First Set of Requests for Production.

10  This motion is made pursuant to the Federal Code of Civil Procedure 37(a),

11  and is based on this Notice of Motion and Motion, the Memorandum of Points and

12  Authorities, the declaration of Jennifer L. Jonak filed concurrently herewith, all of the

13  pleadings and papers on file in this action, and such other evidence as may be adduced at

the hearing.

14

15

16  DATED: December 5, 2007

17

18  By:_____/s/ Jennifer L. Jonak_____
                      LUKENS LAW GROUP
19                   Attorneys for Plaintiff Reese M. Jones

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

This litigation arises out of a fraudulent scheme by Defendants Bayerische Hypo-
und Vereinsbank AG and HVB Structured Finance, Inc. ("HVB") to promote illegal tax
shelters over a period of at least eight years.  Declaration of Jennifer L. Jonak ("Jonak
Decl."), Ex. 1, p. 2, ¶ 2; Second Amended Complaint ("SAC") ¶ 14.  These tax shelters
involved over $3.5 billion worth of purported financing and resulted in over $1.8 billion in
phony tax losses.  Jonak Decl., Ex. 1, p. 2, ¶ 2.  The shelters included "a number of
fraudulent tax shelter transaction . . . known as "Bond Linked Issue Premium Structure"
("BLIPS"), Custom Adjustable Rate Debt Structure" ("CARDS"), "common trust fund,"
and "357(c)" transactions" as well as other tax shelters alleged in the complaint.  Jonak
Decl., Ex. 2, ¶¶ 2, 5 (HVB admitting its involvement in 29 BLIPS shelters, 29 CARDS
shelters, 23 "common trust fund" transactions and several 357(c) transactions, as well as
"other transactions").

There is no dispute as to HVB's knowing involvement in this fraud.  HVB has
paid $29 million in fines to the United States Government and entered into a Deferred
Prosecution Agreement admitting its culpability and knowing participation in tax shelter
fraud.  Jonak Decl., Ex. 2, ¶ 26.  Specifically, HVB admits that it "engaged in conduct that
was unlawful and fraudulent, including:  (i) agreeing to participate in fraudulent tax
shelter transactions [including CARDS]; and (ii) preparing and signing false and
fraudulent factual recitations, representations and documents as part of the documentation
underlying the shelters."  Jonak Decl., Exs. 1, p. 2, ¶ 2.  In addition, one of HVB's senior
officers has pled guilty to multiple counts of criminal tax evasion and conspiracy based
upon his role with multiple fraudulent and illegal tax shelters.  Jonak Decl., Ex. 4. There is
also no dispute that HVB's fraud encompassed the CARDS Facility, the type of tax shelter
sold to Plaintiff.  Jonak Decl., Exs. 1-3.

Unfortunately, HVB refuses to produce in discovery documents related to its
fraudulent tax shelter work.  It has agreed to produce documents specifically related to

1  Plaintiff's transaction, but has refused to produce unredacted documents related to the

2  general conception, origination and development of the CARDS Facility, as well as its

3  general policies and procedures documents.  It has also refused to produce documents

4  related to the other CARDS transactions it sold, other fraudulent tax shelters it sold, and

5  other individuals and entities involved in the tax shelters.[1]  Because this is a RICO case,

6  HVB's participation in other tax shelters is directly relevant to proving that it engaged in

7  predicate acts.  Plaintiff respectfully requests that this Court order HVB to produce these

8  other categories of documents, which are responsive to Plaintiff's document requests.[2]

9  **II.    ARGUMENT**

10          **A.    HVB Must Produce Unredacted "General" CARDS and**
                   **Policy/Procedures Documents**

11

12          There is no dispute with HVB that Plaintiff is entitled to discovery of "general"

13  CARDS documents, in other words, documents related to HVB's origination,

14  development, marketing and other general activities related to the CARDS Facility.

15  However, HVB has indicated that it intends to redact from all such documents any

16  information that refers to another CARDS (or tax shelter) client or that client's

17  information.  Jonak Decl., ¶ 4.  This is unacceptable.  Plaintiff is entitled to the names and

18  information of other CARDS clients, who may be witnesses in this litigation and may be

19  able to testify about misrepresentations made by HVB that are similar to those made to

20  Plaintiff.  Redacting such information also prevents Plaintiff from being able to identify

21  and distinguish the documents related to each transaction, which in turn leaves him unable

22  to compare representations made by HVB in the various transactions, determine how

23  many transactions are at issue, determine which transactions were registered with the IRS

24  as tax shelters, and assess differences in how the wire monies and currencies were treated.

25  _____

[1]    There are additional discovery requests that are disputed between the parties, but
26  Plaintiff's counsel is hoping to resolve those in continuing meet and confer with HVB's
    counsel.
27  [2]    In order to simplify this motion, Plaintiff has grouped his discussion of the
    relevant requests by topic, rather than by each request number.  The requests themselves
28  and HVB's responses are set forth in Ex. 5 to the Jonak Decl.  The document consists
    primarily of boilerplate objections – the same objection to virtually every request made of
    HVB.

1   HVB has also refused to produce documents sufficient to show its general policies

2   and procedures related to loans or lines of credit (which the CARDS Facility was

3   purported to be).  *See, e.g.*, Jonak Decl., Ex. 5, RFP Nos. 14-17 (agreeing only to produce

4   documents related to Mr. Rezner's specific transaction, but no general policies/procedures

5   documents).  These "general" documents are necessary to show the extent to which HVB

6   deviated from standard banking procedures in marketing and carrying out its fraudulent

7   tax shelter activity.  *See also* Jonak Decl., Ex. 5, RFP No. 18 (requesting documents

8   related to changes to the policies and procedures as a specific result of any tax shelter

9   transaction); RFP No. 23 (policies and procedures relating to tax shelters).

10   It is Plaintiff's understanding that HVB has taken this position (and the others set

11   forth in this motion) in order to protect itself from liability for "voluntarily" producing

12   client-related documents, and that a Court order will alleviate it from such concerns.[3]

13   Jonak Decl., ¶ 6.  This should not be a concern in any event.  In June 2007, Plaintiff's

14   counsel provided HVB's counsel with a draft protective order that protects the

15   confidentiality of documents produced by HVB, including any client or other sensitive

16   information.  Jonak Decl., ¶ 5.  To date, HVB's counsel has not commented on that draft

17   protective order or proposed any alternative form of protective order.  Jonak Decl., ¶ 6.  A

18   protective order provides sufficient protection for confidential or private information. *See,*

19   *e.g., Vollert v. Summa Corp.*, 389 F.Supp. 1348, 1351 (D.C. Hawaii 1975.) Moreover, a

20   disclosure pursuant to a discovery request is not a "voluntary" production of information

21   by HVB.  FRCP 34, 37.  However, to the extent that HVB requires a court order to

22   comply with its discovery obligations, Plaintiff requests that this Court order HVB to

23   produce all general CARDS documents in unredacted form.[4]

24   [3]   Although HVB asserted numerous objections in its actual responses (Jonak Decl.,
Ex. 5), the objections discussed during meet and confer revolved around relevance and the

25   client's reluctant to produce without a court order.  Jonak Decl., ¶ 6.
[4]   Plaintiff's counsel provided HVB's counsel with a copy of this Court's discovery

26   orders in the *Jones v. Deutsche Bank* case, another CARDS tax shelter litigation that has
been deemed a related case.  Jonak Decl., ¶ 5.  Those discovery orders contain the Court's

27   rulings on virtually all of these exact issues:  the production of general CARDS
documents, documents related to other CARDS transactions, documents related to other

28   tax shelters, and documents related to other individuals and entities involved in tax
shelters.  Jonak Decl., Exs. 6-7.  HVB's counsel conceded during meet and confer

**B.     HVB Must Produce Documents Related to Other Tax Shelters, Including All Other CARDS Transactions, Which Are Predicate Acts for Plaintiff's RICO Claim**

HVB also objects to producing documents related to CARDS Facility transactions other than Mr. Rezner's, as well as any tax shelters other than the CARDS Facility, even those that it admitted were fraudulent in its Deferred Prosecution Agreement.  There is no question that documents related to these other shelters are relevant.  FRCP 26(b)(1) provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  FRCP 26(b)(1).  In his complaint, Plaintiff has alleged that HVB, as part of a RICO enterprise, engaged in the specific tax shelters for which he seeks discovery.  Specifically, Plaintiff alleges that "the defendants entered into an arrangement to market and promote various fraudulent tax strategies, *one of which* became dubbed the CARDS Facility . . ."  SAC ¶ 14.  Plaintiff names these specific tax shelters, alleging that defendants were involved with the "development, creation and promotion of numerous other illegal or abusive tax shelters, including schemes known as ZENS, Lippo/NPL, BOSS, Son-of-Boss, BLIPS, MIDCO, FLIPS, OPIS, TRACT, IDV, and COBRA."  SAC ¶ 48.  *See also* SAC ¶¶ 32, 67.  In addition, HVB has *admitted* its involvement in other tax shelters.  Jonak Decl., Exs. 1-3 (admitting participation in BLIPS, common fund, 357(c) and "other" tax shelters).  Some of these transactions, such as ZENS, were the predecessor or original versions of the CARDS Facility transactions.  Others, such as BLIPS, were discontinued by HVB when the IRS declared them to be abusive tax shelters.  SAC, ¶ 40.  Plaintiff is entitled to discovery of them to determine the extent of HVB's knowledge about the impact of these shelters on the taxpayer clients and the reasons why it discontinued certain shelters.

Discovery into prior transactions is also essential for establishing the pattern and continuity elements of RICO.  *See United States v. Turkette*, 452 U.S. 576, 583 (1981) ("proof used to establish [the enterprise and the pattern elements of RICO] may in

---

discussions that this Court had already addressed most, if not all, of these issues but wanted to reserve the right to protest the production of documents nonetheless, in particular, because of concerns about liability for "voluntary" production of client documents.  Jonak Decl., ¶ 6.

1   particular cases coalesce"); *Southwest Hide Co. v. Goldston,* 127 F.R.D. 481, 485 (N.D.

2   Texas 1989) ("Evidence of civil RICO defendants' conspiratorial conduct can be relevant

3   in establishing the existence of an "enterprise" and a "pattern of racketeering activity,"

4   despite the fact the activity injured persons other than the plaintiff attempting to use the

5   evidence.").

6          The documents are therefore reasonably calculated to lead to the discovery of

7   admissible evidence, and must be produced.  *See* FRCP 26(b)(1); *Survivor Media, Inc. v.*

8   *Survivor Productions*, 406 F.3d 625 (9th Cir. 2005). *See also Cox v. Administrator U.S.*

9   *Steel & Carnegie*, 17 F.3d 1386, 1420 (11th Cir. 1994) (reversing trial court's issuance of

10  a protective order barring RICO plaintiff from obtaining discovery about defendants'

11  practices at an industrial facility different from the facility which had given rise to

12  plaintiff's labor claims, because the discovery sought "is plainly relevant to plaintiffs'

13  efforts to establish a pattern of racketeering activity"); *Southwest Hide Co. v. Goldston,*

14  *127 F.R.D. 481*, 482 (N.D. Texas 1989) (granting motion to compel discovery as to check

15  kiting scheme that did not involve plaintiff or all of the defendants and took place years

16  after plaintiff filed his complaint, because evidence of the scheme would be relevant to the

17  pattern element of plaintiff's RICO claim); *King v. E.F. Hutton Co.,* 117 F.R.D. 2, 8-9

18  (D.D.C. 1987) (granting plaintiff's motion to compel discovery concerning the clients and

19  accounts of defendants unrelated to and long after the transactions upon which plaintiff

20  based his RICO claim, because the pattern requirement of a civil RICO cause of action

21  requires evidence indicating the defendants had engaged in similar endeavors in the past

22  or they were engaged in other criminal activities).

23         Furthermore, whether the named defendants participated in an enterprise with

24  respect to the other shelters is a question of fact appropriate for resolution by a jury.

25  *United States v. Griffin*, 660 F.2d 996, 1000.  Even assuming that HVB denied

26  participation in such an enterprise – which might be difficult given HVB's admission in

27  its Deferred Prosecution Agreement – that alone is insufficient grounds upon which to

28  deny Plaintiff discovery on properly alleged claims.  Even where not all parties were

1  involved in all of the transactions for which discovery is sought, that would not be a bar to

2  seeking discovery on those cases – for continuity of individuals is not a die-hard

3  prerequisite for a RICO enterprise.

> The requirement of continuity of personnel is not absolute
> [for a RICO enterprise]. If it were, the ringleader of an
> organized criminal operation could defeat RICO charges by
> occasionally substituting new operatives at the lowest level.
> We have recognized that the requirement of continuity may
> be met even where some changes in personnel occur, and
> where different individuals manage the affairs of the
> enterprise at different times and different places. *[citations
> omitted]* The determinative factor is whether the
> associational ties of those charged with a RICO violation
> amount to an organizational pattern or system of authority.

*United States v. Lemm,* 680 F.2d 1193, 1199 (8th Cir. 1982).  *See also United States v.
Riccobene*, 709 F.2d 214, 223 (3rd Cir. 1983) (RICO enterprise only requires that "the
various associates function as a continuing unit," but "does not mean that individuals
cannot leave the group or that new members cannot join at a later time.").  Based upon
this, the Court should order HVB to produce documents in response to Plaintiff's
discovery requests seeking documents related to other tax shelters specifically alleged in
Plaintiff's Complaint.

### C.    HVB Must Produce Documents Related to Other Specified Individuals and Entities

HVB also objects to producing documents related to other "specified individuals
and entities," namely, myCFO, Chenery, LeBoeuf, Graham Taylor, Ruble, FIST, Mio
Sylvester, Michael Sherry, Roy Hahn, Sidley and Randall Bickham.  These individuals are
alleged in Plaintiff's complaint to have had a connection to the tax shelter sold to Plaintiff
or been part of the RICO enterprise.[5]  SAC, ¶¶ 10, 14-16, 32, 37, 62.  There are also
requests seeking documents related to HVB's communications with Deutsche Bank
regarding tax shelters.  Deutsche Bank is another bank alleged to have engaged in some of

---

[5]    The only exception is Michael Sherry, who, along with Mio Sylvester, was
involved in setting up the shell limited liability company for Plaintiff's CARDS
transaction, as well as numerous other CARDS and NPL tax shelters.  Plaintiff is not
aware of any dispute as to Mr. Sherry's involvement.

1   the same tax shelters as HVB (including CARDS), who is alleged to have helped HVB

2   refine and design the structure of the CARDS Facility.  SAC, ¶ 16.  In order to show the

3   conception, development and management of the RICO enterprise, as well as the parties'

4   past fraudulent acts, Plaintiff is entitled to discover information about these individuals

5   and their relationships with HVB, which Plaintiff has alleged preceded the CARDS

6   Facility transaction sold to him.  Such discovery is necessary to show the organization and

7   development of the RICO enterprise and determine which individuals had what roles in

8   the enterprise.  It is also necessary to show how HVB first became aware of the CARDS

9   Facility and other tax shelters, and how it handled "kickbacks" paid between the various

10  tax shelter promoters (such as the kickback fees paid by Chenery to induce favorable

11  opinion letters about the legality of the CARDS transactions).  SAC, ¶ 37.

12          Plaintiff has also sought documents related to others at HVB who performed

13  substantive ("non-ministerial") work on the CARDS Facility transactions and other tax

14  shelters.  Jonak Decl., Ex. 5, RFP Nos. 34-35.  HVB has objected and refused to produce

15  any documents, indicating that it provided names of individuals involved in "some

16  capacity with plaintiff's CARDS transaction" in its initial disclosures.  However, for the

17  reasons set forth above, documents sufficient to show the persons who performed work on

18  other CARDS transactions, as well as other tax shelters in which HVB has admitted

19  committing fraud, are relevant to Plaintiff's RICO investigation.  The Court should

20  therefore order HVB to produce documents related these other individuals and entities and

21  the tax shelters at issue.

22

23

24  ///

25  ///

26  ///

27

28

1

### III.    CONCLUSION

2          For all of the reasons above, Plaintiff respectfully requests that this Court grant his

3   Motion to Compel and order HVB to produce documents responsive to Plaintiff's RFPs

4   Nos. 5, 6, 8-75, 87-96, 98-105, 108-112, 114-116, 118-120, 122-129, 133-139, 141-144,

5   146, 149, and 153-156 within thirty days from the date of the hearing, along with a

6   privilege log identifying all documents withheld.

7

8   Dated:  December 5, 2007            LUKENS LAW GROUP
                                        WILLIAM M. LUKENS (State Bar No. 037196)
9                                       JENNIFER L. JONAK (State Bar No. 191323)

10                                      By: _____/s/ Jennifer L. Jonak_____
11                                             Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28